Case: 18-1003    Document: 20    Filed: 09/23/2019    Page: 1 of 26

FILED

## NOT FOR PUBLICATION

SEP 23 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1003-KuFL |
| ELIMINATOR CUSTOM BOATS, INC.; ROBERT D. LEACH, | Bk. No. 2:14-bk-19226-DS |
| Debtors. | |
| ROSENSTEIN & HITZEMAN, AAPLC, | |
| Appellant, | |
| v. | MEMORANDUM[*] |
| ELIMINATOR CUSTOM BOATS, INC.; OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ELIMINATOR CUSTOM BOATS, INC., | |
| Appellees. | |

Submitted Without Argument on August 26, 2019
at Pasadena, California

Filed – September 23, 2019

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

———————

Appearances:    Robert B. Rosenstein and J. Like Hendrix of Rosenstein &
Associates on brief for appellant Rosenstein & Hitzeman,
AAPLC; James E. Till of Bosley Till LLP on brief for
appellee Eliminator Custom Boats, Inc.; John P. Schafer of
The Schafer Law Firm, P.C. on brief for appellee Official
Committee of Unsecured Creditors of Eliminator Custom
Boats, Inc.

———————

Before: KURTZ, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellant, Rosenstein & Hitzeman AAPLC (R&H), appeals from the

bankruptcy court's order approving a post-confirmation, multi-party

settlement (Settlement) under Rule 9019.[1]

On appeal, R&H, former bankruptcy counsel to chapter 11 debtor

Eliminator Custom Boats, Inc. (Eliminator) and Mr. Robert Leach

(collectively, Debtors), argues that the provisions in the Settlement which

govern the priority and payment of post-confirmation administrative

claims constituted an impermissible modification of the confirmed plan

---

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules
of Bankruptcy Procedure.

(Plan) in violation of § 1127(b). Appellees, Eliminator and the Official
Committee of Unsecured Creditors (Committee), contend that this appeal
is equitably moot because R&H failed to obtain a stay, the Settlement has
been fully consummated, and the fee provisions at issue cannot be severed
from the Settlement. They also argue that the bankruptcy court properly
approved the Settlement under the standards set forth in *Martin v. Kane (In
re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

For the reasons discussed below, we conclude that this appeal is not
equitably moot. We also conclude that the fee provisions in the Settlement
which provide for the priority and payment of post-confirmation
professional fees constitute an impermissible modification of the Plan.
Accordingly, we REVERSE the bankruptcy court's approval of these
provisions and REMAND for proceedings consistent with this
memorandum.

## FACTS

The underlying facts are undisputed. In late 2010, over the span of a
few months, Eliminator and Mr. Leach, the manager and owner of
Eliminator, each filed chapter 11 petitions. The cases were jointly
administered.

Almost four years later, Debtors sought confirmation of their second
amended Plan. The Plan provided for the continued operation of
Eliminator's core business of manufacturing and selling custom racing and

recreational watercraft and related items. Payments to Eliminator's creditors would be made from revenues of the business and, in Mr. Leach's bankruptcy case, from the income he derived from employment with Eliminator and other sources.

In order to confirm the Plan, Debtors negotiated with the professionals in the jointly administered cases, including R&H, to discount their fees subject to a $1,000,000 cap and receive installment payments on their allowed claims. If the professionals did not agree to the treatment, the Plan was doomed. Debtors ultimately reached an agreement with the professionals (Stipulation). Among other things, the Stipulation provided that Section 4.3 of the Plan would be clarified to provide that the professional fees in the Eliminator case would be reduced first according to a formula and then by any amounts that were paid to that professional. The Plan was further clarified to provide that in the event Eliminator's business was sold, any unpaid reduced allowed professional fee claims would be paid from the sale proceeds prior to any distribution to the holders of claims or interests. The parties to the Stipulation included: Eliminator; the Committee; Bosley Till, LLP (Till), counsel for Eliminator; Jay Gotfredson, counsel for Mr. Leach; The Schafer Law Firm, P.C. (SLF), counsel for the Committee; Venturelli, Cary & Company; Armory Consulting, Co.; and R&H. The bankruptcy court's order confirming the Plan approved the Stipulation and the accompanying modifications to the

4

Plan.

After confirmation, Eliminator struggled financially such that the Plan never became effective. Numerous motions were filed to extend the effective date of the Plan, which originally was to occur not later than three months after the confirmation date. By the end of February 2016, the Plan had still not become effective. In addition, the Committee filed separate motions at various times to convert Eliminator's case to chapter 7, to modify the Plan, and to vacate the confirmation order. These motions were either denied or taken off calendar. By late 2018, Debtors had not implemented the Plan.

Meanwhile, Mr. James Wong, a turn-around expert, had been working with Eliminator as the CFO on a part-time basis as part of the confirmed Plan. Under a shareholder resolution, Mr. Wong was appointed as the President/CEO, Secretary, and Treasurer/CFO for Eliminator and charged with overseeing and marketing Eliminator's business for sale as a going concern.

Eliminator later entered into an agreement for sale whereby the purchaser paid $1.5 million in cash and assumed certain liabilities. However, there were a variety of issues related to the sale, including the payment of taxes and payment to the largest secured creditor. The fees and costs of the post-confirmation professionals were also at issue. To facilitate the sale, a settlement agreement was reached between various constituents.

Among other things, the Settlement set forth the priority of payments from the sale proceeds. As an express condition of the sale, the Settlement had to be approved by the bankruptcy court, unless waived by the purchaser.

After the sale was approved, Eliminator and the Committee (collectively, Appellees) moved for an order approving the Settlement under Rule 9019. According to the motion, resolution of the disputed matters was necessary "for the Plan to be modified in a manner that provided the means for the . . . Plan as modified to go effective immediately for the Eliminator and Leach estates, and to make distributions to creditors." The Settlement agreement stated that the "Confirmed Plan . . . shall be modified to memorialize both this settlement and the proposed sale of assets."

The Settlement provided for the compromise of various claims and other disputes not relevant to the issues in this appeal. In addition, the Settlement reordered the priority of payments from sale proceeds which differed from those initially set forth in the Stipulation, that had been incorporated into the confirmed Plan. Under ¶ 8(e), as fifth priority, SLF and Till would each receive $100,000 on account of services rendered post-confirmation in connection with the sale and which would be applied to reduce the amount of their allowed post-confirmation administrative claims. Under ¶ 8(f), the Settlement provided that as sixth priority, (i) $90,000 would be paid to holders of allowed general unsecured claims

6

against Eliminator on a pro rata basis, and (ii) all remaining minimum bid sale proceeds would be distributed among the professional administrative claimants in the Eliminator case (both pre- and post-confirmation to the present) on a *pari passu* and pro-rata basis.

R&H was not a party to the Settlement and filed a limited opposition to the motion. At this point, R&H was apparently owed $116,795.93 in administrative fees. R&H objected to the provisions that earmarked $100,000 each to SLF and Till and provided for payment of both pre-confirmation and post-confirmation professional administrative claimants on a *pari passu* and pro rata basis. R&H maintained that payments to professionals from the sale proceeds should be done in accordance with the Plan, with payment first to the outstanding allowed reduced pre-confirmation professional fees. According to R&H, the purpose of the distribution provisions under the court-approved Stipulation was to avoid the scenario where post-confirmation professional claims were competing with pre-confirmation professional claims.

R&H further argued that there was no reason why ensuring payment to certain professionals should be part of a settlement that is a condition of sale, particularly when not all professional administrative creditors were parties to the agreement. R&H also pointed out that payment of the $90,000 to unsecured creditors prior to the professionals violated the express provisions of the Plan, although it admitted it was not seeking to undo that

provision. In addition, R&H asserted its reliance on the Stipulation, which facilitated confirmation of the Plan. R&H requested the bankruptcy court to allow the sale to proceed with all payments to professionals held pending further order of the court.

At the hearing on the matter, Appellees were aligned. In general, they argued that the terms of the Plan did not control because at that time everyone assumed and thought that the case was going to complete itself. But that did not happen, and the Plan never became effective. They further argued that, but for the post-confirmation efforts, pre-confirmation fees would not be paid at all since the cases would have converted to chapter 7 long ago and fees paid to the chapter 11 professionals would have to be disgorged. In addition, according to Appellees, the Settlement was fair because it provided for pre- and post-confirmation claims on a pro rata basis and each would receive forty-nine percent.

At another point, Mr. Till further explained: "And there are lots of provisions in that [P]lan that – which is why it likely needs to be modified because there's lots of provisions in that [P]lan that the settlement agreement is changing." In addition, Mr. John Schafer of SLF told the court that the $100,000 payments to SLF and Till were ingrained as part of the Settlement because Mr. Leach was having him and Mr. Till do a lot of work to get the Settlement done. Finally, Mr. Schafer argued that the Settlement should be approved "as is," with two caveats: first, the payments would be

8

made from the sale proceeds but subject to disgorgement, and second, to the extent that R&H wanted to file an action, it was free to do so.

In the end, the bankruptcy court concluded that the $100,000 payments to SLF and Till were appropriate on account of their post-confirmation efforts. The court further found that the provisions in the Plan for the payment of professional fees in the event of a sale did not contemplate that the Plan would never become effective. The bankruptcy court also decided that the provisions in the Settlement pertaining to the payment of post-confirmation fees were important and could not be simply cut out. The court overruled R&H's objection and, on the whole, found that the *A & C Properties* factors for approval of a compromise were met. The bankruptcy court approved the Settlement by order entered December 19, 2018. R&H filed a timely appeal from the order.

Post-appeal, Eliminator filed a document in the bankruptcy court giving notice that it was withdrawing the Plan.

## JURISDICTION

The  bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (2). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether this appeal is equitably moot;

Whether the Settlement provisions for payment of post-confirmation attorney fees constitute an impermissible modification of the Plan.

9

## STANDARDS OF REVIEW

We review our own jurisdiction, including questions of equitable mootness, de novo. *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014).

We review a bankruptcy court's conclusions of law de novo and its findings of fact under the clearly erroneous standard. *Dolven v. Bartleson (In re Bartleson)* 253 B.R. 75, 78-79 (9th Cir. BAP 2000) (citation omitted). A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 & n.21 (9th Cir. 2009) (en banc) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985)) (explaining that the clearly erroneous standard of review is an element of the clarified abuse of discretion standard).

"A chapter 11 plan should generally be interpreted as if it were a contract." *In re Bartleson,* 253 B.R. at 78 (quoting *C.F. Brookside, Ltd. v. Skyview Mem'l Lawn Cemetery (In re Affordable Hous. Dev. Corp.),* 175 B.R. 324, 329 (9th Cir. BAP 1994) (citing *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993)). State law governs interpretation of the Plan. *Hillis Motors, Inc.,* 997 F.2d at 588.

Settlement agreements are also contracts, which a federal court interprets by looking to the contract law of the state in which it sits. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990); *In re Oakhurst Lodge, Inc.,* 582

B.R. 784, 791 (Bankr. E.D. Cal. 2018).

Under California law, the interpretation of a contract is a question of law. *Renwick v. Bennett (In re Bennett),* 298 F.3d 1059, 1064 (9th Cir. 2002) (citation omitted).

## DISCUSSION

## A.    This appeal is not equitably moot.

Appellees contend that this appeal is equitably moot on the grounds that (1) R&H failed to seek or obtain a stay; (2) there has been a comprehensive change of circumstances since the approval of the Settlement because numerous distributions and releases have been accomplished; and (3) the provisions regarding the payment of professional fees cannot be severed from the Settlement, as they were an integral part of complex negotiations.

In response, R&H argues that the case is not equitably moot since the parties receiving the funds are parties to the appeal.[2] According to R&H, it is not too difficult to "unscramble the eggs," as disgorgement of professional fees in bankruptcy cases is commonplace, and the Committee's counsel, Mr. Schafer, expressly stated at the hearing that payments under the Settlement would be subject to disgorgement.

## 1.    Legal standards for determining whether an appeal is

---

[2] The notice of appeal did not specifically name SLF or the Till law firm as parties to the appeal. However, Mr. Schafer and Mr. Till have appeared in this appeal.

equitably moot

We may dismiss an appeal if we deem it equitably moot. *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33-35 (9th Cir. BAP 2008). Equitable mootness is "a judge-made abstention doctrine unrelated to the constitutional prohibition against hearing moot appeals." *Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014). The doctrine holds that even where effective relief is theoretically possible, and the appeal is therefore not constitutionally moot, courts may "dismiss appeals of bankruptcy matters when there has been a 'comprehensive change of circumstances . . . so as to render it inequitable for [the] court to consider the merits of the appeal.'" *Id.* (quoting *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012). In other words, "[e]quitable mootness concerns whether changes to the status quo following the order being appealed make it impractical or inequitable to unscramble the eggs." *Castaic Partners II, LLC v. Daca-Castaic, LLC (In re Castaic Partners II, LLC)*, 823 F.3d 966, 968 (9th Cir. 2016) (citation omitted).

The Ninth Circuit follows a four-step process to determine whether an appeal is equitably moot. We look first at whether a stay was sought, for absent that a party has not fully pursued its rights. However, failure to seek or obtain a stay does not automatically result in equitable mootness. *In re Thorpe Insulation Co.*, 677 F.3d at 881 ("If Appellants here have presented

appellate claims that can be remedied by some reasonable means without totally dislodging the § 524(g) plan, it would be inequitable to dismiss their appeal on equitable mootness grounds merely because the reorganization has proceeded."); *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002) (holding appeal was not equitably moot even though the appellant did not seek a stay); *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 576–78 (9th Cir. 1998) (holding that appeal of summary judgment order was not equitably moot despite the appellant's failure to seek or obtain a stay).

If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred.[3] If "many intricate and involved transactions" called for by the plan have been "so far implemented that it is impossible to fashion effective relief for all concerned," an appeal may be equitably moot. *Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 797 (9th Cir. 1981).

Next, we will look to the effect a remedy may have on third parties not before the court. For this factor, "the question is not whether it is possible to alter a plan such that no third party interests are affected, but whether it is possible to do so in a way that does not affect third party

---

[3] Although *Thorpe* focused on plan consummation, the Ninth Circuit has held that the same general principles apply to any equitable mootness analysis. *In re Mortgs. Ltd.*, 771 F.3d at 1271.

13

interests to such an extent that the change is inequitable." *In re Thorpe Insulation Co.*, 677 F.3d at 882.

Finally, and most importantly, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan, thereby creating an uncontrollable situation for the bankruptcy court. *Id.* at 881, 883. In considering this factor, the court should be mindful that where the bankruptcy court could grant some relief, even if such relief is incomplete, the appeal is not equitably moot. *Id.* at 883.

The court evaluates equitable mootness with respect to specific claims, not the entire appeal. *In re Filtercorp, Inc.*, 163 F.3d at 576–78 (holding that although appeal regarding sale of assets was moot, appeal of summary judgment order that did not seek to overturn asset sale was not equitably moot). The "party moving for dismissal on mootness grounds bears a heavy burden." *In re Thorpe Insulation Co.*, 677 F.3d at 880 (citation omitted).

## 2. Application of the standards

As to the first *Thorpe* factor, R&H did not seek or obtain a stay. While this factor weighs in favor of finding R&H's appeal equitably moot, it does not require a mootness finding. "The failure to gain a stay is one factor to be considered in assessing equitable mootness, but is not necessarily controlling." *Id.* at 881–82.

As to the second factor, because there was no stay, the full execution of the Settlement appears to have occurred. This factor weighs in favor of equitable mootness. However, that is not the end of the story. If the appeal succeeds, we may fashion whatever relief is practicable. After all, an appellant "would readily accept some fractional recovery . . . rather than suffer mootness of [its] appeal as a whole." *Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 10 F.3d 944, 954 (2d Cir. 1993) (citation omitted).

The third factor weighs against a finding of equitable mootness. The issues in this appeal would not affect the rights of third parties not before the court. R&H does not challenge the sale or other provisions of the Settlement that do not pertain to the payment of post-confirmation professional fees. Rather, R&H seeks revocation of the discrete provisions which impact only the payment of professional fees from the sale proceeds to parties who are before the court. Further, although the post-confirmation professionals have been paid in accordance with the Settlement, an order compelling disgorgement of attorney's fees and expenses does not require the bankruptcy court to unravel other parts of the Settlement which would impact third parties not before the court and will not affect the sale of Eliminator's business. *See L.A. Cty. Treasurer & Tax Collector v. Mainline Equip., Inc. (In re Mainline Equip., Inc.)*, 865 F.3d 1179, 1183 (9th Cir. 2017); *Focus Media, Inc. v. Nat'l Broad. Co. (In re Focus Media, Inc.)*, 378 F.3d 916, 922

(9th Cir. 2004) (requiring one party to disgorge money it has received does not require the unraveling of a complicated bankruptcy plan). In sum, we could fashion equitable relief without unduly or inequitably impacting innocent third parties.

The final and most important factor also weighs against equitable mootness. R&H does not seek to overturn the entire Settlement. As noted, R&H raises issues that are directed at discrete provisions which can be modified without making an unmanageable situation for the bankruptcy court. Altering these provisions would not completely unravel the multi-party Settlement.

In weighing the factors, we are mindful that federal courts "'have a virtually unflagging obligation . . . to exercise the jurisdiction conferred on them." *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976). We conclude that, taken together, the factors weigh against equitable mootness.

Appellees contend, with little if any legal analysis, that this appeal is equitably moot because the relevant fee provisions cannot be severed from the Settlement. Granted, in certain circumstances, courts have found equitable mootness when the provision at issue is a necessary part of the settlement reached by the parties. *See Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.),* 326 B.R. 491, 503 (S.D.N.Y. 2005) (finding appeal of exculpation provision moot where the bankruptcy court found the

provision necessary for the negotiation of the reorganization plan); *Trans World Airlines, Inc. v. Texaco, Inc. (In re Texaco Inc.)*, 92 B.R. 38, 45-50 (S.D.N.Y. 1988) (finding appeal seeking to sever and rescind releases moot because releases were part of an "integrated settlement" and their rescission would "undermine the entire reorganization"). Although courts generally will not sever releases from consummated transactions, those circumstances are not present here.

The Settlement is a contract interpreted according to California law. *Jeff D.*, 899 F.2d at 759. Under California law, the intent of the parties determines the meaning of the contract. Cal. Civil Code §§ 1636, 1638. "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Santisas v. Goodin,* 17 Cal. 4th 599, 608 (Cal. Ct. App. 1998). Here, the plain language of the Settlement does not show that the bargain might have been different without the fee provisions at issue, or that there might have been no settlement at all. Indeed, there is no language in the Settlement that says all the provisions are essential, non-severable terms, nor is there mention that it is an integrated document.

Moreover, as further discussed below, the provision for payments to post-confirmation professionals modify the confirmed Plan. In sum, the entire Settlement does not need to be undone, and as long as we can give effective relief, there is no basis for finding this appeal equitably moot.

17

**B.** **The terms of the Plan do not provide for the payment of post-confirmation fees.**

"Confirmation of a chapter 11 plan binds the debtor, creditors, and equity security holders." *In re Oakhurst Lodge, Inc.*, 582 B.R. at 791 (citing 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind") and *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) (once plan is confirmed it is binding on all parties)); *see also Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 46 (9th Cir. BAP 2012) ("Taken together, §§ 1127(b) and 1141(a) impose an important element of finality in chapter 11 proceedings, allowing parties to rely on the provisions of a confirmed reorganization plan.") (citation and internal quotation marks omitted).

"Moreover, the confirmation order has res judicata effect on issues that were raised in conjunction with the plan confirmation or could have been raised at that time." *In re Oakhurst Lodge, Inc.*, 582 B.R. at 791. Res judicata promotes fairness to parties who have negotiated and relied upon Chapter 11 plans and supports the strong policy of finality in the reorganization process. Absent relief from the confirmation order or a court-approved modification, the plan continues to bind the parties and restricts a reorganized debtor from settling disputes in a way that impacts the distribution provisions of the plan. *Id.* at 792.

A confirmed bankruptcy plan is construed as a contract between the

debtor and creditors. *Hillis Motors, Inc.*, 997 F.2d at 588; *Miller v. United States*, 363 F.3d 999, 1003–04 (9th Cir. 2004). A stipulation is also akin to a contract. *Jeff D.*, 899 F.2d at 759. California law governs the interpretation of the Plan and the Stipulation. *Hillis Motors, Inc.*, 997 F.2d at 588. Under California law, the basic goal in contract interpretation is to give effect to the parties' mutual intent at the time of contracting. Cal. Civil Code §§ 1636, 1639. Moreover, "[t]he relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties." *United Comm. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (internal quotations and citations omitted). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." 17 Cal. 4th at 608.

Applying these contract interpretation principles, we conclude that the Plan contains no language that would allow the payment of post-confirmation fees to SLF and Till from the sale proceeds. Indeed, even if the post-confirmation fees could be categorized as an administrative claim or professional fee claim as defined in the Plan, the Plan set a bar date for such claims as thirty (30) days after the confirmation date.

"Administrative Claims" are defined as:

Costs or expenses of administering a Case, that are allowable under section 507(a)(1) of the Bankruptcy Code or 28 U.S.C. § 1930, and if applicable, section 503(b) of the Bankruptcy Code. Includes Claims incurred post-petition in the ordinary course of

19

a Debtor's business, fees and expenses of Professionals, and fees due to the U.S. Trustee's Office.

"Administrative Claims Bar Date" is defined as the "Deadline for submitting requests for payment of an Administrative Claim, established in the Plan as thirty (30) days after the Confirmation Date."

"Professionals" is defined as:

Any Person employed by a Debtor and/or the Committee pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code. This definition excludes professionals that may be selected and employed by a Reorganized Debtor on and after the Effective Date with respect to services rendered by such professionals on and after the Effective Date.

"Professional Fee Claims" are defined as "All fees and expenses claimed by Professionals retained by a Debtor and the Committee that have been approved on a final basis by a Final Order."

Paragraph 4.3 of the Plan entitled "Professional Fee Claims" provides:

Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be Allowed only if: (i) on or before thirty (30) days after the Confirmation Date, the entity holding such Professional Fee Claim both files with the Bankruptcy Court a final fee application or a motion requesting Allowance of the fees and serves the application or motion on the Reorganized Debtors, their respective counsel, the Committee and the U.S. Trustee; and (ii) the Court allows the Professional Fee Claim by Final Order.

20

Furthermore, the fact that the parties did not anticipate a four-year delay or that post-confirmation attorney fees would accrue does not change the Plan's plain language. In interpreting the Plan and Stipulation, we give effect to the parties' mutual intent at the time of contracting. Cal. Civil Code §§ 1636, 1639.

Section 1129(a)(9)(A) requires that, unless agreed otherwise, each holder of an administrative claim will receive cash equal to the allowed amount of such claim on the effective date of the plan. Through the Stipulation, which was incorporated into the confirmed Plan, the pre-confirmation professionals agreed to a different treatment by reducing their fees according to the formula and by agreeing to installment payments. However, their treatment changed in the event of sale. Paragraph 5 of the Stipulation makes clear that in the event of a sale, the pre-confirmation professional fees would be paid from the sale proceeds with first priority as required under § 1129(a)(9)(A).

Although there is no Plan language authorizing the payment of post-confirmation professional fees, and despite the plain language in the Stipulation and Plan that gives pre-confirmation professionals first priority payment from the sale proceeds, the Settlement authorized $100,000 payments to the post-confirmation professionals with priority over the pre-

21

confirmation professionals.[4] The payment and priority for the payment of
post-confirmation professional fees materially altered the rights of R&H
with respect to the payment of its fees. *See Findley v. Blinken (In re Joint
Eastern & Southern Dist. Asbestos Litig.)*, 982 F.2d 721, 747–48 (2d Cir. 1992)
(finding that a "modification" occurred under § 1127(b) when the change to
the plan "effectively alter[ed]" a creditor's payment right). Pre-confirmation
professionals such as R&H previously stood on an equal footing in the
event Eliminator's business was sold, but they emerged from the Settlement
with differing rights as to amounts recoverable due to priority $100,000
payments to SLF and Till (as well as payments to unsecured creditors).

Further, the record shows that the Settlement was intended to modify
the confirmed Plan. The motion seeking approval of the Settlement states:
"The Settlement Agreement provides a clear and certain path to
(a) resolving the most significant unresolved disputes in the Cases, and as a
result, (b) providing agreed upon terms to modify the Confirmed Plan in a
manner that will allow the . . . Confirmed Plan to promptly go effective
. . . ." Mr. Wong's declaration in support of the motion states that the

---

[4] Bankruptcy courts have allowed claims for post-confirmation attorney's fees for
work benefitting the estate or effectuating the plan when the terms of the plan
contemplated such fees. *See Chase Manhattan Bank, N.A. v. Sultan Corp. (In re Sultan
Corp.)*, 81 B.R. 599 (9th Cir. BAP 1987) (Since post-confirmation attorney's fees were
contemplated by the plan, the fees must be administrative expenses.); *In re Canton
Jubilee, Inc.*, 253 B.R. 770 (Bankr. E.D. Tex. 2000) (confirmed plan established no deadline
for the presentation of administrative claims arising in the chapter 11 case and the plan
contemplated the marketing of the Debtor's primary asset for a period of one year).

Settlement "[p]rovides a basis for the Confirmed Plan to be modified and go

effective without objection by the Settling Parties." He further declares that

the Settlement "is fully consistent with the intent of the Confirmed Plan."

The Settlement agreement attached to Mr. Wong's declaration states at ¶ 1:

"The 'Confirmed Plan', set forth as Docket No. 756 shall be modified to

memorialize both this settlement and proposed sale of assets (the 'Modified

Plan')."[5]

In sum, the fee provisions in the Settlement that pertained to the

payment of post-confirmation attorney fees constituted a modification of

the Plan in violation of § 1127(b),[6] the exclusive means by which to modify a

_____

[5] The Committee is not authorized or empowered to bind its constituencies.
"They . . . are not agents of and cannot bind the groups they represent." *In re Daewoo
Motor Am., Inc.,* 488 B.R. 418, 429-30 (C.D. Cal. 2011) (citing 7 Collier on Bankruptcy
¶ 1103.05[1][d][i] (2011)). "The plan will be submitted to creditors . . . for voting and
those holders may or may not follow the committee's recommendations." *Id.*

[6] Section 1127 provides in relevant part:

(b) The proponent of a plan or the reorganized debtor may modify such
plan at any time after confirmation of such plan and before substantial
consummation of such plan, but may not modify such plan so that such
plan as modified fails to meet the requirements of sections 1122 and 1123
of this title. Such plan as modified under this subsection becomes the plan
only if circumstances warrant such modification and the court, after notice
and a hearing, confirms such plan as modified, under section 1129 of this
title.

(c) The proponent of a modification shall comply with section 1125 of this
title with respect to the plan as modified.

(continued...)

23

plan. *Alberta Energy Partners v. Blast Energy Servs., Inc. (In re Blast Energy Servs., Inc.)*, 593 F.3d 418, 427 (5th Cir. 2010) (§ 1127(b) is the sole means for modification of the plan of reorganization after it has been confirmed); *see also In re Reserve Capital Corp.*, Bankr. No. 03-60071, 2007 WL 1989285, at *7 (Bankr. N.D.N.Y. July 6, 2007) (if a compromise constitutes a modification, it is still permissible unless it comes after the confirmed plan has been substantially consummated, or if it is proposed by a person other than the plan proponent or the reorganized debtor.).

Moreover, the last-minute withdrawal of the Plan (after the Settlement was approved and the appeal was taken) did not affect the binding nature of the confirmed Plan. Section 1144 is the exclusive means by which a plan can be revoked. *Dale C. Eckert Corp. v. Orange Tree Assocs., Ltd. (In re Orange Tree Assocs., Ltd)*, 961 F.2d 1445, 1447 (9th Cir. 1992). At this late date, a motion for revocation is barred under § 1144.[7] In short, "confirmed chapter

---

[6](...continued)
(d) Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

[7] Section 1144 provides:

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud . . . .

24

11 plans have a binding effect that is durable." *In re Oakhurst Lodge, Inc.*, 582 B.R. at 794.

In sum, if the modification of the Plan was allowed, a new plan would be created as far as the treatment of the pre-confirmation professional fee claims. Of further note is the fact that their treatment in the event of a sale was based on a court-approved Stipulation and agreement with Debtors so that their Plan could get confirmed. To allow Eliminator and the Committee to unilaterally rescind the Stipulation through the consummation of the Settlement would violate the principle of finality expected in chapter 11 confirmed plans. Under these circumstances, the confirmed Plan must be given res judicata effect.

The remainder of Appellees' arguments regarding waiver and a potential structured dismissal of the case are without merit. There is no basis for allowing Appellees to short-cut the procedures for plan modification under § 1127(b). Finally, in light of the narrow issues on appeal, it is unnecessary for us to consider whether the bankruptcy court erred in approving other provisions in the Settlement under the standards set forth in *A & C Properties.*

CONCLUSION

For the reasons stated above, we REVERSE the bankruptcy court's approval of the provisions in the Settlement pertaining to the payment of post-confirmation attorney fees to SLF and Till and REMAND for

Case: 18-1063, Document: 20, Filed: 09/23/2019    Page: 26 of 26

proceedings consistent with this memorandum.